IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 16, 2014

## CHARLES STEVEN SHIVERS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-C-2587     J. Randall Wyatt, Jr., Judge**

No. M2014-00455-CCA-R3-PC - **Filed April 7, 2015**

The petitioner was convicted by a jury of attempted first degree murder and especially aggravated robbery, both Class A felonies, and sentenced to an aggregate sentence of forty-three years. The petitioner filed a timely post-conviction petition, which was amended by appointed counsel. After conducting a hearing, the post-conviction court denied relief. Post-conviction counsel failed to file a timely notice of appeal. Because we do not conclude that the interest of justice requires us to hear the appeal, we dismiss it as untimely.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jeffrey T. Daigle, Nashville, Tennessee, for the appellant, Charles Steven Shivers.

Herbert H. Slatery III, Attorney General and Reporter; Clarence Lutz, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Ben Ford, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The petitioner's convictions resulted from the robbery and shooting of the victim, Artenner Mann, in the course of a drug transaction. *State v. Charles Steven Shivers a.k.a. Scott Kevin McNeil*, No. M2009-02079-CCA-R3-CD, 2011 WL 6382552 (Tenn. Crim. App. Dec. 19, 2011), *perm. app. denied* (Tenn. Apr. 11, 2012). At the petitioner's trial, the victim testified that a man named Lamont Butler had arranged for the petitioner to buy around $1,500 worth of crack cocaine from the victim. The petitioner arrived in a white SUV, and during the transaction, he and another man shot the victim thirteen times. *Id.* at *1. The victim also testified that the men searched his clothing and that he was missing over $2,000 when he was released from the hospital. *Id.* at *1-2. Mr. Butler confirmed that he arranged the drug transaction and testified that the petitioner confessed to shooting the victim. *Id.* at *2. An eyewitness saw a white SUV leaving the scene, and telephone records established contact between the victim and petitioner on the night of the incident. *Id.* at *3. The victim, communicating through the use of hand signals while hospitalized, initially implicated Mr. Butler in the shooting. *Id.* at *4.

The jury began deliberations late in the day on April 15, 2009, and was not able to reach a decision the first or second day:

> On April 16, 2009, the jury resumed deliberations at 8:47 a.m. At 2:44 p.m., the trial court polled the jury and determined that no verdict had been reached. The jury consensus was to continue deliberations longer into the day and only to continue into tomorrow if necessary. However, one juror, Juror Maloney complained: "Judge, I don't think – we've hashed this and hashed this and hashed it. And I don't think staying another day is going to change it. I think – we've discussed it from every angle." The judge listened and explained, "I would like to let you continue to deliberate a little further." At 3:35 p.m., the jury returned with a new foreperson. They retired for the evening and resumed deliberations the following day. When court opened the following day, the trial judge acknowledged the occurrence of an *ex parte* contact with a juror. During a jury-out meeting held on the record, the trial court described the circumstances and content of the *ex parte* contact as follows:
>
> > All right. Have a seat. Bring the defendant in. I've talked to Mr. Mahoney [sic]. And he's a very nice gentleman. And he was just a little bit, you know,

stressed, in a way. He's older than I thought he was, as a matter of fact. You know, I thought he was about my age and that's old enough. But, anyway, he works at Opryland in security. We talked. We didn't say one word about the trial. I just wanted to make sure his health was okay. And Alex was in there with me, sitting there as my trusted monitor or whatever it is. We said not one word about this trial. All we talked about is him and his health and his well-being. And I'm satisfied that after we talked, he's going to be fine. And he can handle this and he can come in here and then we're going to go ahead with deliberations. So – I mean, I did it in the best way I could do. And that's all I know to say. So bring the Jury in. He's a nice gentleman, he is.

*Id.* at *5.

Defense counsel did not object to this *ex parte* contact or move for a mistrial, and the jury convicted the petitioner after further deliberation. *Id.* at *6. Defense counsel raised the issue of the *ex parte* contact as error on appeal. *Id.* at *10-11. This court concluded that the petitioner waived the issue by failing to object or to establish a proper record from which the nature and extent of the *ex parte* contact could be determined. *Id.* at *11. However, we further noted:

Even had this issue not been waived, we can discern from the record no manner in which either the defendant or the justice system suffered any sort of prejudicial effect from the trial judge's well-intentioned, albeit legally erroneous, inquiry into the ongoing health status of this elderly juror.

*Id.*

At the post-conviction hearing, the petitioner testified regarding trial counsel's alleged deficiencies, including trial counsel's failure to call certain witnesses, trial counsel's allegedly deficient advice regarding plea agreements and the potential outcome of trial, and trial counsel's failure to move for a mistrial after the trial court brought the *ex parte* contact to the attention of the parties. Trial counsel testified that the decision not to call the witnesses was strategic, and he testified that he informed the petitioner about plea offers and the possible outcome of trial but the petitioner maintained his innocence and did not want to plead guilty. Trial counsel testified that he did not remember exactly what had occurred

regarding the *ex parte* contact, but he did not dispute that he had neglected to make a motion for a mistrial or a request for a hearing. The post-conviction court entered an order on January 14, 2014, denying relief. The post-conviction court found that trial counsel had not performed deficiently in advising the petitioner regarding the plea agreement and that the decision not to call witnesses was a reasonable tactical decision which did not prejudice the petitioner. The post-conviction court further concluded that the petitioner was not entitled to relief based on the failure to move for a mistrial because he had shown no prejudice. The petitioner's post-conviction attorney filed a notice of appeal on March 4, 2014. On appeal, the petitioner's sole issue is the claim that he is entitled to post-conviction relief because his attorney was deficient in failing to move for a mistrial or to request a hearing regarding the *ex parte* contact.

## ANALYSIS

The petitioner claims that he received the ineffective assistance of counsel because trial counsel "failed to develop the record which *might have* revealed harmful error." (Emphasis added.) The State counters that the notice of appeal was not timely filed and that this court should therefore dismiss the appeal.

Tennessee Rule of Appellate Procedure 4(a) requires a notice of appeal under Tennessee Rule of Appellate Procedure 3 to be filed within thirty days of the entry of the judgment which is being appealed. However, the notice is not jurisdictional, and the filing "may be waived in the interest of justice." Tenn. R. App. P. 4(a). An appellate court may waive the notice of appeal on its own motion when it is in the interest of justice. *Crittenden v. State*, 978 S.W.2d 929, 932 (Tenn. 1998). Such a waiver, however, "is not automatic." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). In determining whether waiver of the notice requirement is in the interest of justice, this court may look to the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors. *Id.* When examining the nature of the issues presented for review, this court has taken into consideration the merits of the appeal. *See Smith v. State*, 873 S.W.2d 5, 6 (Tenn. Crim. App. 1993) ("[T]he underlying issues of this case require resolution in order to do substantial justice."); *State v. Dodson*, 780 S.W.2d 778, 781 (Tenn. Crim. App. 1989) ("Since the appeal of the appellant has merit, it is in the interest of justice that the notice of appeal requirement be waived."); *see also State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *3 (Tenn. Crim. App. Dec. 27, 2005).

The petitioner's counsel filed a notice of appeal on March 4, 2014, more than thirty days after the post-conviction court entered judgment denying the petitioner relief. Therefore, the notice of appeal was untimely. The record here contains no request for a

waiver of the notice requirement. Neither is there any explanation of the reason for the untimely notice, despite the fact that the State raised the issue in its brief.

Moreover, it is clear that the petitioner cannot demonstrate any sort of prejudice stemming from trial counsel's failure to object to the *ex parte* contact. An *ex parte* contact between a juror and the trial judge is subject to harmless error analysis. *State v. Tune*, 872 S.W.2d 922, 928 (Tenn. Crim. App. 1993). This court specifically noted on direct appeal that there was no "prejudicial effect from the trial judge's well-intentioned, albeit legally erroneous, inquiry into the ongoing health status of this elderly juror." *Shivers*, 2011 WL 6382552, at *11. To show that relief is warranted on a claim of ineffective assistance of counsel, the petitioner must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006). To show prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Id.* Here, the petitioner failed to adduce any evidence at the post-conviction hearing regarding the nature of the *ex parte* contact. Accordingly, he cannot show a reasonable probability that trial counsel's alleged deficiency in failing to develop a record of the interaction between the judge and the juror changed the results of the proceeding. Consequently, the post-conviction court correctly determined that he failed to show prejudice. "If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." *Rockwell*, 280 S.W.3d at 214. Accordingly, we conclude that "the interest of justice" does not warrant waiver of the notice requirement, and we dismiss the appeal as untimely.

## CONCLUSION

Based on the foregoing, the appeal is dismissed.

_____
JOHN EVERETT WILLIAMS, JUDGE